# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**JENNIFER HART**                                                           **PLAINTIFF**

**V.**                **NO. 5:18-CV-137-JM-BD**

**SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

## I. Introduction:

On May 4, 2015, Jennifer Hart applied for disability benefits, alleging disability beginning April 22, 2015. (Tr. at 16) Her claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") also denied her application. (Tr. at 30) Ms. Hart requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's

decision now stands as the Commissioner's final decision. Ms. Hart filed this case seeking judicial review of the decision denying her benefits.

## II. **The Commissioner's Decision:**

At the time of the hearing, Ms. Hart measured 5'5" and weighed 301 pounds. (Tr. at 63) The ALJ found that Ms. Hart had not engaged in substantial gainful activity since the alleged onset date of April 22, 2015. (Tr. at 18) At step two of the five-step analysis, the ALJ found that Ms. Hart had the following severe impairments: multiple sclerosis, degenerative disc disease, affective disorders, anxiety disorders, and obesity. *Id.*

After finding that Ms. Hart's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Ms. Hart had the residual functional capacity ("RFC") to perform the full range of work at the sedentary level with some additional limitations. (Tr. at 21) She could only frequently reach, handle, finger, and feel. *Id*. She could only occasionally climb ramps and stairs and balance, stoop, kneel, crouch, and crawl. *Id*. She could never climb ladders, ropes, or scaffolds. *Id*. She must avoid unprotected heights, moving mechanical parts, extreme heat and cold, and pulmonary irritants. *Id.* She must be able to use a cane to ambulate to and from her workstation. *Id*. Mentally, she could perform simple, routine, repetitive tasks and make simple work-related decisions. *Id*. She could work where interpersonal contact is incidental to the work performed and where supervision is simple, direct, and concrete. *Id*.

The ALJ found that Ms. Hart was unable to perform any past relevant work. (Tr. at 28) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find,

based on Ms. Hart's age, education, work experience and RFC, that she was capable of performing work in the national economy as document preparer and call-out phone clerk. (Tr. at 29) Based on that determination, the ALJ held that Ms. Hart was not disabled. *Id.*

## III. **Discussion:**

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

### B. Ms. Hart's Arguments on Appeal

Ms. Hart contends that the Commissioner's decision to deny benefits lacks substantial supporting evidence. She argues that the ALJ failed to resolve an apparent conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") and that the ALJ improperly discounted the opinion of Dr. Roger Troxel, M.D. She further argues that she suffers from moderate difficulties in concentration, persistence,

and pace, and that the ALJ did not account for these deficiencies in the RFC. Finally, she contends that the RFC for light work exceeds her abilities.[1]

Ms. Hart suffered from back and neck pain arising from degenerative disc disease. A May 2015 thoracic MRI showed multilevel disc degeneration. (Tr. at 388) But, a February 2014 lumbar MRI was normal. (Tr. at 56) Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). At six doctors' visits in 2014 and 2015, Ms. Hart denied musculoskeletal symptoms. (Tr. at 346, 351, 356, 362, 374, 380) In May 2015, Ms. Hart had normal range-of-motion in her extremities but was observed to have a broad-based gait. (Tr. at 454) She was encouraged to wear tennis shoes and walk short distances multiple times a day.

In July 2015, Ms. Hart's doctor urged her to exercise and get out of the house. (Tr. at 559-560) A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

In August 2015, Ms. Hart reported that she had fallen multiple times, a comment she made often and reiterated at the hearing. (Tr. at 627-634) She was slow to sit and slow to rise from a chair. *Id.* She was referred to physical therapy. She reported that she had been doing home exercises and yard work. (Tr. at 637) Her provider urged her to remain active. (Tr. at 633, 641-642)

---

[1] Ms. Hart erroneously states that the RFC was for light work. The RFC in fact, was for sedentary work with postural limitations.

In October 2015, after reporting more falls, Ms. Hart was prescribed a cane. (Tr. at 645) She also used a TENS unit, which she said was helpful. *Id*. In November 2015, Ms. Hart was given a prescription for a shower bench. (Tr. at 653-660)

By May 2016, Ms. Hart reported that she was doing well mentally and physically, but also that she was using her cane. (Tr. at 670, 683, 769-773) Her doctor recommended that she elevate her feet when sitting or lying down. (Tr. at 669-674) She had steroid injections. (Tr. at 752-754) An August 2017 MRI of the cervical spine revealed shallow annular bulge at C6/7 with no neural impingement and abnormal cord signal at C3/4/5/6. (Tr. at 36-7)

Multiple brain MRIs showed lesions indicative of multiple sclerosis, but Ms. Hart treated her symptoms conservatively with medication. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Dr. Troxel characterized Ms. Hart's MS as remitting and relapsing. (Tr. at 809-812)

In February 2015, Ms. Hart's multiple sclerosis was classified as stable. (Tr. at 471) She was alert and oriented in May 2015, with no neurological or sensory impairment. (Tr. at 427) In August 2015, Ms. Hart was urged to exercise and not stay in bed. (Tr. at 633) Also, in September 2016, she was encouraged to exercise and lose weight. (Tr. at 756)

As for mental impairments, Ms. Hart was treated multiple times by a licensed clinical social worker ("LCSW") in 2015 and 2016. But at those visits, more often than not, Ms. Hart had congruent mood and affect and organized and relevant thought content. (Tr. at 581-617) In May 2015, she reported that her mood and anxiety were improving with medication. (Tr. at 351) Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). She reported that her depression was improved in September 2015; also, that she was more alert on Adderall and felt more focused. (Tr. at 581, 627, 637) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

By April 2016, Ms. Hart reported that she was more energetic and really felt well. (Tr. at 613) She said that "everything has been as good as it can be and she was doing fine." *Id.* In September 2016, she said she felt better when taking Cymbalta. (Tr. at 676)

In August 2015, when Ms. Hart filled out a function report, she stated that she could cook simple meals, do laundry two or three times a week, shop in stores, and go outside two or three times a day. (Tr. at 260-262) Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995)

One state-agency reviewing doctor opined that Ms. Hart was capable of semi-skilled work. (Tr. at 94). The second state-agency doctor stated that Ms. Hart could

understand, remember, and carry out only simple instructions. (Tr. at 112) The ALJ gave these opinions some weight and settled on an RFC that allowed for unskilled work.

Dr. Roger Troxel, who saw Ms. Hart only a few times, stated in January 2017 that Ms. Hart was markedly limited in her ability to walk, stand, lift, and carry, and was somewhat impaired in her ability to handle and finger. (Tr. at 751) He opined that she met the criteria for disability. *Id*. A doctor's opinion on whether a claimant can work, however, "involves an issue reserved for the Commissioner and therefore is not the type of medical opinion to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). And relatively mild objective testing, paired with the ability to perform daily activities, contradict Dr. Troxel's opinion. Likewise, his medical source statement, which assigned extreme limitations to Ms. Hart based on multiple sclerosis, is inconsistent with his February 2015 findings that her multiple sclerosis was stable. (Tr. at 471, 809-812) And the opinion is also inconsistent with repeated recommendations for Ms. Hart to exercise. Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

While Ms. Hart says that the ALJ did not give good reasons for discounting the opinion of Dr. Troxel, in fact, she did give valid reasons. She found that the opinion was "inconsistent with the record as a whole" (it was), and that "it was based, at least in part, on the claimant's subjective complaints" (it was). (Tr. at 27) The ALJ properly

7

discounted Dr. Troxel's opinion that Ms. Hart had severe limitations; even still, the RFC included postural limitations and allowed for use of a cane; thus, incorporated some of Dr. Troxel's limitations and fully contemplated the symptoms from multiple sclerosis.

Ms. Hart's argument that the ALJ ignored an inconsistency between the VE's testimony and the DOT is a closer question. The ALJ limited Ms. Hart to unskilled work, with an ability to perform simple, routine tasks and make simple work-related decisions. (Tr. at 21) Interpersonal interaction was limited and supervision had to be simple, direct, and concrete. *Id*. Ms. Hart correctly notes that the jobs the VE identified were jobs with reasoning level three. This requires the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized situations." (DOT at 1011 (4th rev. ed. 1991)); *see Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010). Ms. Hart argues that the conflict between unskilled work and level-three reasoning jobs should have been questioned and resolved by the ALJ.

As this Court previously noted, "while the Eighth Circuit has not unequivocally determined that individuals limited to unskilled work can perform jobs with level-three reasoning ability requirements, it has given guidance on the issue." *McCalla v. Colvin*, No. 3:14-CV-153-JTR 2015 U.S. Dist. LEXIS 110805 at *6, (E.D. Ark., August 21, 2015). The two jobs the VE identified in this case have an SVP of two, which corresponds with unskilled work. The Eighth Circuit has held that unskilled jobs

requiring a reasoning level of three do not appear to be "complex." *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). Indeed, the types of duties described in the DOT for the two jobs identified are not complex: preparing and cutting documents; inserting materials into a document folder; copying information onto a form; calling telephone subscribers. *See* DOT, document preparer, SVP 2, 249.587-018; call-out phone clerk, SVP 2, 247.367-014.

In *Hillier v. SSA*, 486 F.3d 359 (8th Cir. 2007), the VE opined that a claimant who was limited to following "simple, concrete instructions" could work as a cashier. The Court of Appeals upheld the VE's reasoning and state that this was "not inconsistent" with the DOT's description of a cashier's work as requiring level 3 reasoning. *Hillier*, 486 F.3d at 367. In *Hillier*, the claimant had worked as a cashier before the alleged disability onset date and had not shown any mental deterioration since performing that job. *Id*. Likewise, in this case, Ms. Hart worked many years as a nursing assistant, stopping that work in 2015. (Tr. at 61) She did not show significant deterioration in mental capacity since that time; indeed, she had improved with medication and reported feeling energetic and "as good as [she] can be" in 2016. (Tr. at 613) So *Hillier* gives guidance here, and indicates that reversal is not appropriate.

Ms. Hart points to several cases in support of her position. In the first case she cites, this Court remanded the case because of a conflict between simple work and level 3 reasoning. *James v. Berryhill*, No. 3:16-CV-00348-BD (Feb. 8, 2018). In that case,

9

however, the claimant was operating in the moderate-retardation range, and the consultative examiner had opined that the claimant would be unable to complete work-like tasks in an acceptable timeframe. *Id.* at 4. The state-agency examiner had found that the claimant had borderline intellectual functioning. *Id.* There is no evidence of such a developmental delay in this case.[2] And in this case, there was no consultative psychological exam, likely because Ms. Hart did not demonstrate debilitating mental problems. Finally, the *James* case is distinguishable because the RFC limited the claimant to SVP 1 or 2 work, which indicates a lower level of functioning than simply SVP 2 work (to which the ALJ limited Ms. Hart in this case).

Ms. Hart also cites a recent case where the RFC limitation was to simple 1-to-2-step tasks. *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018). In that case, the court found that the restriction was inconsistent with level-3 reasoning, specifically because of the 1-to-2-step-task language. *Id.* This precise language indicated a more limited RFC than *simple* work. *Id.* The RFC here, however, does not specifically limit Ms. Hart to 1-to-2-step tasks; thus, the *Thomas* case is distinguishable.[3]

---

[2] The other case Ms. Hart cites to for reversal also involved a claimant with borderline intellectual functioning, which wasn't present here. *See Swope v. Barnhart*, 436 F.3d 1023 (8th Cir. 2006).

[3] In another decision, the court found that an RFC limitation to tasks with simple 1-to-2 step instructions was inconsistent with even level-2 reasoning, but again, the analysis pivoted on the phrase "1 to 2 step instructions," language that is not present in this case. *See Stanton v Comm'r, SSA*, 899 F.3d 555 (8th Cir. 2018).

In a 2019 case, the Seventh Circuit found no conflict with findings that a claimant could perform jobs with level-3 reasoning and an RFC limiting the claimant to unskilled work. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). In *Terry*, the claimant had completed both high school and training to become a nursing assistant, much like Ms. Hart. Likewise, Ms. Hart indicated that she could perform daily activities such as cooking, reading, and watching television—all activities consistent with level-3 reasoning.

Ms. Hart contends that there is a conflict between the VE's testimony and the DOT, but her attorney did not identify such a conflict at the hearing. An ALJ must ask a VE to clarify testimony if a conflict is apparent, but she need not embark on a fishing expedition if no conflict is obvious. Here, the ALJ *did* ask the VE if her testimony was consistent with the DOT. She responded that her education, training, and experience supported the consistency of her testimony. (Tr. at 82)

Ms. Hart's attorney did not point to any conflict, and as noted, there is no conflict between unskilled work and level 3 reasoning.[4] Even if there is an inconsistency, remand is not required when "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Boone v. Barnhart*, 252 F.3d 203, 209 (3d Cir. 2004).

---

[4] *See Marley v. Comm'r*, 2015 U.S. Dist. LEXIS 23419 at*9-13 (M.D. Fla. Feb 26, 2015) (simple work not necessarily in conflict with a DOT reasoning level of 3, but ALJ under no obligation to investigate possible conflicts that were not raised at the hearing).

Finally, the jobs listed by any VE are only representative examples, and not an exhaustive list. *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014). The Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Not all jobs in every category have requirements identical to, or as rigorous as, those listed in the DOT. *See Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000).

Ms. Hart's argument that the call-out job is eliminated due to the required interpersonal contact is not persuasive. First, the RFC was for interpersonal contact incidental to the work performed. And second, Ms. Hart does not contend that the document-preparer job was eliminated. The VE testified that there were 45,000 available jobs for document preparer. Notably, "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). Because there were ample document preparer jobs available, any error by the ALJ with respect to interpersonal contact is harmless.

The record does not show a disabling mental condition, no matter what technical arguments Ms. Hart makes. Ms. Hart was feeling well in 2016, after her positive response to mental health medication. When the overall record supports the ALJ's conclusion, remand is not indicated.

Finally, Ms. Hart argues that moderate limitations in persistence, pace, and concentration were not included in the RFC. To the contrary, the RFC for simple work, with simple decision making, simple supervision, and incidental interpersonal contact fully incorporated any mental limitations supported in the record.

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision that Ms. Hart was not disabled. The ALJ gave proper weight to the opinion of Dr. Troxel; there was no conflict between the VE's testimony and the DOT; and the RFC sufficiently incorporated all of Ms. Hart's limitations supported by the record. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 28th day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE